UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANDREA BECKWITH, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:24-cv-00384-LEW |
| | ) |
| AARON FREY, in his personal capacity and in his official capacity as Attorney General of Maine, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO DISMISS PERSONAL-CAPACITY
CLAIM, WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiffs challenge under the Second Amendment a law enacted by Maine's Legislature in April 2024 imposing a 72-hour waiting period for certain purchases of firearms. They have sued Maine's Attorney General in both his official and personal capacities. Because the Attorney General (along with other public officials) has authority to enforce the waiting-period law, the Attorney General does not challenge the basis for the official-capacity claim (although he contests the merits of such a claim). *See Ex parte Young*, 209 U.S. 123 (1908). But because there are no allegations of <u>any</u> conduct by the Attorney General, much less conduct violating any plaintiff's constitutional rights, and because even if there were such allegations the Attorney General would be entitled to qualified immunity, the Court should dismiss the personal-capacity claim pursuant to Fed. R. Civ. P. 12(b)(6).

In further support, the Attorney General relies upon the following Memorandum of Law.

# MEMORANDUM OF LAW

## Relevant Factual Allegations[1]

On April 30, 2024, Maine's Legislature enacted a law, codified at 25 M.R.S. § 2016, stating, in part, that "[a] seller may not knowingly deliver a firearm to a buyer pursuant to an agreement sooner than 72 hours after the agreement."  Complaint (ECF No. 1) at ¶¶ 25-26. "Section 2016 is a civil statute enforceable by the Attorney General, and it carries a fine of between $200-$500 for a first violation and $500-$1,000 for each subsequent one." *Id*. at ¶ 27 (citing 25 M.R.S. § 2016(3) and 17-A M.R.S. § 4-B(1)).[2]  Certain firearm sales are exempt from the waiting-period law.  *Id*. at ¶ 28.

There are nine plaintiffs:  a firearms and self-defense instructor and her business (Andrea Beckwith and East Coast School of Safety); three firearms dealers and their businesses (James White and J White Gunsmithing; Adam Hendsbee and A&G Shooting; and Thomas Cole and TLC Gunsmithing & Armory), and a person "who sought to acquire a handgun for self-defense purposes and passed an immediate background check, but was unable to acquire a firearm for 72 hours because of Section 2016" (Nancy Coshow).  *Id*. at ¶¶ 10-14.  Pursuant to 42 U.S.C. § 1983, plaintiffs allege that Section 2016 violates their Second Amendment rights.  *Id*. at ¶¶ 59-64.  For relief, plaintiffs seek a declaration that Section 2016 violates the Second Amendment, an order enjoining the Attorney General from enforcing Section 2016, and an award of "nominal damages" to Ms. Coshow from the Attorney General in his personal capacity.  *Id*. at p. 25 (Prayer for Relief).[3]

---

[1] The Attorney General takes these facts as true solely for purposes of this motion. *See, e.g., Román-Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).
[2] In full, 17-A M.R.S. § 4-B(1) provides:  "All civil violations are expressly declared not to be criminal offenses. They are enforceable by the Attorney General, the Attorney General's representative or any other appropriate public official in a civil action to recover what may be designated a fine, penalty or other sanction, or to secure the forfeiture that may be decreed by the law."
[3] Plaintiffs also seek costs and attorneys' fees pursuant to 42 U.S.C. § 1988. *Id*.

## **Applicable Legal Standards**

In ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court "accept[s] as true all well-pleaded facts set forth in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011); *see also Román-Oliveras*, 655 F.3d at 45. Although there need not be "detailed factual allegations," a plaintiff must make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570); *see also Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23-24 (1st Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012) ("To implement the plausibility standard, an inquiring court first must separate wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**Argument**

*I. Plaintiffs Do Not Allege That the Attorney General Violated Their Constitutional Rights.*

Section 1983 provides in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ." 42 U.S.C. § 1983. This statute "provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).

A personal-capacity Section 1983 claim cannot be maintained against a state official unless the official was personally involved in the allegedly wrongful conduct. *Iqbal*, 556 U.S. at 676 (in a Section 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016) (rejecting theory of respondent superior in Section 1983 claims and stating that "the supervisor's liability must be premised on his own acts or omissions"); *McSorley v. Richmond*, 242 F. Supp. 2d 24, 28 (D. Me. 2002) ("Because a Section 1983 claim is defendant-specific, a plaintiff must show how each defendant's own, personal conduct caused the plaintiff to be deprived of a constitutional right."); *see also Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 496 (6th Cir. 2020); *Palmer v. Marion Cnty.*, 327 F.3d 588, 593-94 (7th Cir. 2003). Here, plaintiffs do not allege that the Attorney General has taken any action whatsoever, much less that he engaged in conduct depriving any of the plaintiffs of their constitutional rights.[4]

---

[4] That plaintiff Coshow is seeking nominal damages from the Attorney General and not compensatory damages makes no difference. The Attorney General is not aware of support for the proposition that, in a personal-capacity Section 1983 claim, a state official who is not alleged to have done anything wrong can nonetheless be ordered to pay nominal damages. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 293 (2021) (plaintiff could obtain nominal damages from defendants who enforced free speech policies against plaintiff in violation of plaintiff's constitutional rights).

4

### *II. The Attorney General is Entitled to Qualified Immunity.*

Even if plaintiffs had alleged that the Attorney General had personally engaged in unconstitutional conduct by enforcing the waiting-period law against them, the Attorney General would be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"Officials are entitled to qualified immunity unless (1) 'the facts that a plaintiff has alleged or shown make out a violation of a constitutional right' and (2) 'the right at issue was 'clearly established' at the time of [their] alleged misconduct.'" *Walden v. City of Providence*, 596 F.3d 38, 52 (1st Cir. 2010) (quoting *Pearson*, 555 U.S. at 231). The second prong has two aspects. "One aspect . . . focuses on the clarity of the law at the time of the alleged civil rights violation" such that "[t]o overcome qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The other aspect focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id*. An officer should not be subject to liability if the law at the time did not "clearly establish" that the officer's conduct would violate the Constitution. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "It is not enough that the rule is suggested by then-existing

5

precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

As is argued in the Attorney General's opposition to plaintiffs' preliminary injunction motion (ECF No. 13), which the Attorney General hereby incorporates by reference, Maine's 72-hour waiting-period law does not violate the Second Amendment. First, the Second Amendment protects the right to "keep" and "bear" arms, and laws causing delay in taking possession of firearms do not, absent unusual circumstances, implicate that right. Thus, the Second Amendment's plain text does not apply to Maine's law. ECF No. 13, 4-11. Second, even if the plain text did apply, Maine's 72-hour waiting-period law is "consistent with this Nation's historical tradition of firearm regulation." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). Thus, the law does not violate the Second Amendment. ECF No. 13, 11-18. Any action to enforce the waiting-period law, then, would not violate plaintiffs' constitutional rights.

Even if the Court were to now hold that enforcement of Maine's waiting-period law violates plaintiffs' Second Amendment rights, those rights were not clearly established at the time the complaint was filed. To the contrary, to date, every court that has addressed the issue has held that firearm waiting-period laws do not violate the Second Amendment. *Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016);[5] *Knight v. City of N.Y.*, No. 22-CV-3215 (VEC) (VF), 2024 WL 1126309 (S.D.N.Y. Jan. 17, 2024), *report and recommendation adopted in part*, 2024 WL 1096991

---

[5] While *Silvester* was decided prior to the Supreme Court's decision in *Bruen* setting forth the current test for resolving Second Amendment challenges to firearm regulations, that does not mean that the holding in *Silvester* (that a ten-day waiting period does not violate the Second Amendment) was wrong.

(S.D.N.Y. Mar. 13, 2024); *Ortega v. Lujan Grisham*, No. CIV 24-0471 JB/SCY, 2024 WL 3495314 (D.N.M. July 22, 2024); *Vermont Fed'n of Sportsmen's Clubs v. Birmingham*, No. 2:23-CV-710, 2024 WL 3466482 (D. Vt. July 18, 2024); *Rocky Mountain Gun Owners v. Polis*, 701 F. Supp. 3d 1121 (D. Colo. 2023). No state official, then, could reasonably have understood that enforcing Maine's waiting-period law would violate Ms. Coshow's (or any other plaintiff's) Second Amendment Rights.

## Conclusion

For the reasons set forth above, the Attorney General respectfully requests that plaintiffs' personal-capacity claim be dismissed.

Dated: January 31, 2025                     Respectfully submitted,

                                                         AARON M. FREY
                                                         Attorney General

                                                         CHRISTOPHER C. TAUB
                                                         Chief Deputy Attorney General


                                                         /s/ Thomas A. Knowlton
                                                         THOMAS A. KNOWLTON
                                                         Deputy Attorney General
                                                         Chief, Litigation Division
                                                         thomas.a.knowlton@maine.gov

                                                         PAUL SUITTER
                                                         Assistant Attorney General
                                                         Paul.suitter@maine.gov

                                                         Office of the Maine Attorney General
                                                         6 State House Station
                                                         Augusta ME  04333-0006
                                                         Tel. (207) 626-8880
                                                         Fax (207) 287-3145