UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ANDREA BECKWITH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-00384-LEW |
| ) | |
| AARON FREY, in his personal capacity ) | |
| and in his official capacity as Attorney ) | |
| General of Maine, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO STAY PRELIMINARY INJUNCTION ORDER
PENDING APPEAL, WITH INCORPORATED MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 62(d), the defendant, the Attorney General of Maine, respectfully requests that this Court stay pending appeal its order enjoining the Attorney General from enforcing a law imposing a 72-hour waiting period on some purchases of firearms. The undisputed evidence in the record is that waiting periods save lives by meaningfully reducing both suicides and homicides. An expert witness estimated that in one year, a waiting period would have prevented twelve suicides. This fact alone warrants maintaining the waiting period law until the First Circuit has had the opportunity to consider whether the law violates the Second Amendment. The other relevant factors also warrant a stay. This case presents significant legal issues, and this Court's decision is contrary to the Supreme Court's declaration that laws regulating the commercial sale of firearms are "presumptively lawful." The order also conflicts with decisions from several federal appellate and district courts rejecting Second Amendment challenges to firearm sales regulations. The First Circuit has recognized that enjoining enforcement of a state's duly enacted laws is necessarily an irreparable harm. Finally, any harm to plaintiffs is speculative at best and pales in comparison to the harm prevented when lives are

saved. Accordingly, the Court should stay its preliminary injunction order pending appeal. In further support, the Attorney General relies upon the following Memorandum of Law:

## MEMORANDUM OF LAW

### *Background*

In April 2024, following extensive testimony that firearm waiting period laws save lives, the Maine Legislature enacted P.L. 2023, ch. 678, which is now codified at 25 M.R.S. § 2016. In relevant part, it provides: "A seller may not knowingly deliver a firearm to a buyer pursuant to an agreement sooner than 72 hours after the agreement." 25 M.R.S. § 2016(2). The law applies only to sales for which state or federal law requires a background check. *Id*. § 2016(4)(C)(3). The law does not apply to sales to law enforcement officers, correction officers, certain private security guards, licensed firearm dealers, to sales between certain family members, or to sales of curio, relic, and antique firearms. *Id*. § 2016(4). The law went into effect on August 9, 2024.

On November 12, 2024, plaintiffs filed a lawsuit against Maine's Attorney General alleging that the waiting period law violates the Second Amendment. ECF No. 1. That same day, plaintiffs filed a motion seeking to preliminarily enjoin the Attorney General from enforcing the law. ECF No. 4. On February 11, 2025, after briefing was complete, the Court heard oral argument. On February 13, 2025, the Court issued an order granting plaintiffs' preliminary injunction motion. ECF No. 30.

On February 17, 2025, the Attorney General appealed the Court's order to the United States Court of Appeals for the First Circuit. ECF No. 31. The Attorney General now seeks a stay of the Court's order pending resolution of his appeal.

*Legal Standard*

In deciding whether to stay an order pending an appeal, courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009); *Common Cause Rhode Island v. Gorbea*, 970 F.3d 11, 14 (1st Cir. 2020). "The first two factors 'are the most critical.'" *Common Cause Rhode Island*, 970 F.3d at 14 (quoting *Nken*, 556 U.S. at 434). That said, "[t]he consideration of these factors is an equitable one, and a strong showing of one factor may compensate for a weak showing of other factors." *Maine v. U.S. Dep't of Interior*, No. CIV. 00-122-B-C, 2001 WL 98373, at *2 (D. Me. Feb. 5, 2001) (citations omitted). As this Court recognized, "[t]he provision of a stay pending appeal is a discretionary matter attuned to the circumstance of the case at hand." *Ass'n to Pres. & Protect Loc. Livelihoods v. Town of Bar Harbor*, No. 1:22-CV-00416-LEW, 2024 WL 3088752, at *1 (D. Me. June 21, 2024).

***The Attorney General Is Sufficiently Likely to Succeed on the Merits.***

Because a party must usually first seek a stay of an order in the district court before seeking one from the appeals court, Fed. R. Civ. P. 8(a)(1)(A), it would make little sense to condition a party's ability to obtain a stay in the district court on it convincing the court that its decision was likely wrong. *See, e.g., Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844–45 (D.C. Cir. 1977) ("Prior recourse to the initial decisionmaker would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision."); *Sec. & Exch. Comm'n v. BioChemics, Inc.*, 435 F. Supp. 3d 281, 296 (D. Mass. 2020) ("When the request for a stay is made to a district court, common sense dictates that the moving party need not persuade the court that it is likely to be reversed on

3

appeal."). Thus, "[t]o secure from a district court injunctive relief pending appeal, 'the moving party need not persuade the court that it is likely to be reversed on appeal.'" *Ass'n to Pres. & Protect Loc. Livelihoods*, 2024 WL 3088752, at *1 (quoting *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 150 (D. Mass. 1998)).

The First Circuit has suggested that when a "powerful showing of irreparable injury" is made by a party seeking a stay, a party need only establish that its claims "provide[] fair grounds for further litigation." *Pub. Serv. Co. of N.H. v. Patch*, 167 F.3d 15, 26-27 (1st Cir. 1998).[1] And in a case where denial of a stay would result in arguably confidential documents being disclosed, the First Circuit found it sufficient that the appeal presented "serious legal questions." *Providence J. Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979). This Court has granted stays of orders despite remaining convinced that its underlying ruling was correct. *See, e.g., Northeast Patients Grp. v. Me. Dep't of Admin. & Fin. Servs.*, No. 1:20-CV-00468-NT, 2021 WL 5041216, at *3 (D. Me. Oct. 27, 2021) ("While I believe I have appropriately resolved the novel constitutional issues at play, 'it is possible that the Court of Appeals may come to a different conclusion.'") (quoting *U.S. Dep't of Interior*, 2001 WL 98373, at *3). In *Canterbury Liquors & Pantry*, 999 F. Supp. at 150, which this Court cited in *Association to Preserve & Protect Local Livelihoods*, the Court held that with respect to the "likely to succeed" factor, "the movant must only establish that the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear." The District of New Hampshire adopted this same standard. *Fitzmorris v. Weaver*, No. 21-CV-25-PB, 2024 WL 231883, at *2 (D.N.H. Jan. 22, 2024).

Other courts have similarly recognized a relaxed standard for this factor. *See, e.g., Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012) (concluding that an applicant for a stay is not required

---

[1] The First Circuit stated that this "lesser standard" is "defensible." *Id.*

4

to prove that it is more likely than not that it will prevail on the merits); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 439 (5th Cir. 2001) (an applicant for a stay "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.") (cleaned up); *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) ("If Defendants can meet the other requirements for a stay pending appeal, they will be deemed to have satisfied the likelihood of success on appeal element if they show 'questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation.'") (citation omitted); *Washington Metro. Area Transit Comm'n*, 559 F.2d at 844-45 ("[T]ribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained."). While the Attorney General contends that he will likely prevail on the merits on appeal, this Court should at least acknowledge that this case involves serious legal questions. Maine's waiting period law should remain enforceable until the First Circuit has considered those serious questions.

In resolving a Second Amendment challenge to a firearm regulation, a court must first determine whether "the Second Amendment's plain text covers an individual's conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). If it does, the regulation is nevertheless valid if the government "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* As to the first prong, there is, at the very least, a serious legal question as to whether the plaintiffs met their burden of establishing that the Second Amendment's plain text applies to Maine's waiting period law. For the reasons set forth in the Attorney General's opposition to plaintiffs' preliminary injunction motion, the plaintiffs have not met their burden. ECF No. 13, at 5-11. Briefly stated, the Second Amendment protects

the right to "keep" and "bear" arms, not the right to acquire them (unless a restriction on acquiring firearms results in a functional prohibition on keeping them). The Supreme Court has held that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful regulatory measures." *District of Columbia v. Heller*, 554 U.S. 570, 627-27 & n.26 (2008).

      Plaintiffs did not cite a single case in which a court held that a restriction on the commercial sale of firearms (short of a complete ban on such sales) violated the Second Amendment. To the contrary, many courts have rejected Second Amendment challenges to such laws. *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024); *B & L Prods., Inc. v. Newsom*, 104 F.4th 108 (9th Cir. 2024); *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024); *Mills v. New York City*, No. 23-CV-07460 (JSR), 2024 WL 4979387 (S.D.N.Y. Dec. 4, 2024); *Vermont Fed'n of Sportsmen's Clubs v. Birmingham*, No. 2:23-CV-710, 2024 WL 3466482 (D. Vt. July 18, 2024); *Ortega v. Lujan Grisham*, No. CIV 24-0471 JB/SCY, 2024 WL 3495314 (D.N.M. July 22, 2024); *Rocky Mountain Gun Owners v. Polis,* 701 F. Supp. 3d 1121 (D. Colo. 2023). Even though the First Circuit could choose to ultimately part ways with these seven federal district and appellate courts, there can be no doubt that there is "more than a mere possibility" that it will join those courts in sister circuits in concluding that the Second Amendment does not prohibit states from adopting these types of regulations. *See Ass'n to Pres. & Protect Loc. Livelihoods*, 2024 WL 3088752, at *1 (quoting *Nken*, 556 U.S. at 434).

      The Fifth Circuit's recent decision in *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 23-30033, 2025 WL 340799 (5th Cir. Jan. 30, 2025), is not to the contrary. At issue there was a federal law prohibiting the sale or delivery of handguns to persons under the age of 21. 2025 WL 340799, *1. In the context of that complete prohibition, the court stated that "the right to 'keep and bear arms' surely implies the right to purchase them." *Id.*, *4. But the *Reese*

6

court did not call into question its holding in *McRorey* that a law requiring expanded background checks for 18-to-20-year-olds (which could result in purchases being delayed for up to ten days) was neither covered by the plain text of the Second Amendment nor a "functional prohibition[] on keeping" arms. *McRorey,* 99 F.4th at 838.

The outcomes in *McRorey* and *Reese* were different because the laws at issue were different–in *McRorey* the court concluded that the law was not a functional prohibition on keeping, while in *Reese* the court concluded that it was. Like the expanded background check law in *McRorey*, Maine's 72-hour waiting period law is not a "functional prohibition" on possession. It does not ban sales; it merely delays certain sales for a brief period of time to promote public safety. The Second Amendment's plain text does not apply, and there is thus no need to consider the second prong of the *Bruen* test.

In any event, Maine's waiting period law does satisfy the second prong because it is consistent with the Nation's historical tradition of firearm regulation. As the Attorney General set forth in his opposition to plaintiffs' preliminary injunction motion, the impulsive use of firearms to commit homicides and suicides is a societal problem that did not exist at our founding. *See* ECF No. 13, at 12-14. Thus, a "more nuanced approach" is necessary. *Bruen*, 597 U.S. at 27. Laws early in our Nation's history designed to keep firearms aways from intoxicated individuals and laws imposing licensing and permitting conditions are relevant analogues. ECF No. 13, at 14-18.[2] Just like Maine's waiting period law, these laws imposed modest burdens and were intended to decrease the likelihood that persons would use firearms irresponsibly. Three other district courts,

---

[2] The Court distinguished delays caused by background checks because background checks "represent a suite of narrow and definite conditions that can be met," while with Maine's waiting period law, "[n]o one carries away a firearm before the passage of 72 hours from its purchase, regardless of individual circumstance." ECF No. 30, at 13. This ignores the fact, though, that for sales where background checks are required, no one carries away a firearm until the background check has been completed. The fact that a background check looks at a person's particular characteristics, while a waiting period does not, is a distinction without a difference. Both measures delay sales and are designed to keep firearms away from irresponsible persons.

in upholding waiting period laws against Second Amendment challenges, held that such laws are consistent with the Nation's historical tradition of firearm regulation. *Vermont Fed'n of Sportsmen's Clubs*, 2024 WL 3466482, at *25-28; *Ortega*, 2024 WL 3495314, at *36-38; *Polis*, 701 F. Supp. 3d at 1141-46. In sum, even if the Court concludes that the Attorney General is not likely to succeed on the merits, it should at least conclude that, given the importance of the issues and the substantial arguments supporting the constitutionality of the waiting period law, it should remain enforceable pending appeal.

### *The State and Its Residents Will Suffer Irreparable Harm if a Stay is Not Granted.*

As this Court noted, while the Attorney General is the named defendant, the lawsuit is functionally against the State of Maine. ECF No. 30, at 3 n.3. And the First Circuit has recognized that "any time a government is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Dist. 4 Lodge of the Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo*, 18 F.4th 38, 47 (1st Cir. 2021) (cleaned up). Here, moreover, enjoining enforcement of the waiting period law is more than just an abstract injury to Maine's interest in enforcing its laws. As is discussed below, the Attorney General presented undisputed evidence that Maine's waiting period law will save lives by reducing both homicides and suicides. This is precisely why the Legislature enacted the law. Real harms that are truly irreparable will result if the waiting period law cannot be enforced, and a stay will prevent those harms.

### *A Stay Will Not Substantially Injure the Plaintiffs.*

As an initial matter, although the waiting period law was enacted in April 2024 and took effect in August 2024, the plaintiffs did not file this lawsuit until November 2024. "A plaintiff undermines its claim of irreparable harm where there is delay between instituting the action and

seeking injunctive relief." *Friends of Merrymeeting Bay v. Nextera Energy Res., LLC*, No. 2:11-CV-38-GZS, 2013 WL 1835379, at *10 (D. Me. Apr. 30, 2013); *see also Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 163 (1st Cir. 2004). In any event, any harm to plaintiffs from a stay is, at best, speculative.

The firearm-dealer plaintiffs claim that the waiting period law is causing them to lose income. White, Hendsbee, and Cole Decls. (ECF Nos. 1-3, 1-4, and 1-5). Assuming that firearm dealers even have standing to challenge the waiting period law, the extent of any economic harm is, at this point, speculative. Plaintiff Coshow has purchased a firearm and expressed no intent to purchase another one, Coshow Decl. (ECF No. 1-2), so a stay will not cause her harm. Finally, plaintiff Beckwith already carries a gun and by now presumably has purchased the second gun that she alleged she wanted to purchase. Beckwith Decl. (ECF No. 1-1, ¶ 2). A stay will not harm her personally. While she alleges that her clients are at risk if they cannot immediately purchase firearms, it is doubtful that she has standing to allege harm on the part of people with whom she works, and plaintiffs have not demonstrated that the waiting period law harms Beckwith's clients. There is no competent evidence in the record that immediate access to firearms protects one's safety; her clients could borrow a firearm or acquire one through a sale not subject to the waiting period law; and the Maine Coalition to End Domestic Violence testified that services are available to keep victims safe during the waiting period. Stark Test (ECF No. 13-12).

### *A Stay Would Promote the Public Interest by Saving Lives.*

The undisputed evidence in the record is that waiting periods save lives. As Professor Donohue explains:

> Substantial empirical evidence illustrates that waiting periods prior to the purchase of weapons such as those enacted by Maine will reduce suicides – particularly among young adults – and would be expected to reduce the risk of the type of

9

> episodes seen in recent years of enraged individuals buying firearms on the way to commit mass violence and other criminal acts.

Donohue Decl. (ECF No. 16), ¶ 27. One study concluded that waiting period laws reduce firearm suicides by 7.4 percent—the same reduction in Maine's 158 firearm suicides in 2021 would have saved twelve lives that year alone. *Id.*, ¶ 40. Professor Donohue's own research found that waiting period laws "are able to disrupt suicidal ideation and thereby significantly decrease firearm suicides," and reduce suicides by 21-34-year olds by 6.1 percent. *Id.*, ¶ 41. As he notes, "[i]f a particularly lethal mechanism like a gun is readily available, many despondent individuals with what could be a merely passing moment of despair will end up committing suicide when a lapse of time would be enough to dissuade or divert them from such an irreversible action." *Id.*, ¶ 43.

Professor Donohue further opines that waiting periods may reduce the risk of at least some mass shootings, citing as an example a 21-year old who shot and killed eight people in Atlanta in 2021. *Id.*, ¶ 47. The shooter bought the firearm on the day of the shooting after his parents had just thrown him out of the home, and a waiting period could have allowed his immediate mental health crisis to pass. *Id.*; *see also Handgun waiting periods reduce gun deaths*, Luca, M., et al. (ECF No. 13-9) (study concluding that states adopting waiting periods experienced a seventeen percent decrease in homicides and a six percent decrease in suicides). In short, the public interest in saving lives by preventing homicides and suicides overwhelmingly militates in favor of allowing the Attorney General to continue enforcing the waiting period while this appeal is heard.

### Conclusion

For the reasons discussed above, the Attorney General respectfully requests that the Court stay its preliminary injunction order pending resolution of the appeal.

Dated: February 17, 2025                Respectfully submitted,

                                            AARON M. FREY
                                            Attorney General

                                            /s/ Christopher C. Taub
                                            CHRISTOPHER C. TAUB
                                            Chief Deputy Attorney General
                                            Christopher.C.Taub@maine.gov
                                            THOMAS A. KNOWLTON
                                            Deputy Attorney General
                                            Chief, Litigation Division
                                            Thomas.A.Knowlton@maine.gov
                                            PAUL SUITTER
                                            Assistant Attorney General
                                            Paul.Suitter@maine.gov
                                            Office of the Maine Attorney General
                                            6 State House Station
                                            Augusta ME  04333-0006
                                            Tel.  (207) 626-8880
                                            Fax (207) 287-3145

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2025, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered participants as identified in the CM/ECF electronic filing system for this matter.

Dated:  February 17, 2025                  /s/ Christopher C. Taub
                                            CHRISTOPHER C. TAUB
                                            Chief Deputy Attorney General
                                            Office of the Attorney General
                                            6 State House Station
                                            Augusta ME  04333-0006
                                            Tel.  (207) 626-8570
                                            Fax (207) 287-3145
                                            Christopher.C.Taub@maine.gov